E-FILED
Wednesday, 13 April, 2005  04:08:05 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| JANICE TUXHORN, | ) |
| | ) |
|     PLAINTIFF, | ) |
| | ) |
| v. | )   No. 05-2020 |
| | ) |
| CHARLES SHONKWILER, PAM | ) |
| JURKOSHEK, ROBERTA FEWS, | ) |
| and MACON-PIATT REGIONAL | ) |
| OFFICE OF EDUCATION, | ) |
| | ) |
|     DEFENDANTS. | ) |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

NOW COME Defendants, CHARLES SHONKWILER, PAM JURKOSHEK and MACON-PIATT REGIONAL OFFICE OF EDUCATION, by ROBBINS, SCHWARTZ, NICHOLAS, LIFTON & TAYLOR, LTD., Dennis L. Weedman as counsel, and for their Motion to Dismiss Plaintiff's Complaint and Memorandum of Law in Support Thereof state as follows:

**I. INTRODUCTION**

On January 3, 2005, Plaintiff filed a Complaint and Demand for Jury Trial, pursuant to 42 U.S.C. §1983 and §1988[1] alleging Defendants violated her First Amendment right to freedom of association when on or about June 30, 2004 her employment with the Macon/Corrections Special Education District (hereinafter "MCSED") as a clerical technician was allegedly terminated on a political basis. The

---

[1] Defendants understands that Plaintiff includes Section 1988 in her Complaint only as mechanism for recovering attorney's fees should she prevail on her Section 1983 claim, and will not address this claim independently in this Motion to Dismiss.

Complaint also alleges that Defendants Shonkwiler and Jurkoshek, along with Defendant Roberta Fews, all conspired to interfere with the renewal of her employment contract. Plaintiff's Complaint seeks both compensatory and punitive damages, as well as injunctive relief, against the Defendants. For the reasons and arguments presented herein, it is Defendants' position that the Court should dismiss Plaintiff's Complaint against them with prejudice.

## II. FACTS

Macon\Corrections Special Education District ("MCSED") is a not-for-profit operation of the Macon-Piatt Regional Office of Education. MCSED provides special education services exclusively to the Illinois Department of Corrections (hereinafter "IDOC"). The Regional Office and Defendant Shonkwiler serve as administrative agents for MCSED. MCSED personnel work exclusively at IDOC facilities.

The Regional Office is totally dependent upon IDOC for funding of the MCSED program, and the Regional Office has no other funds for salary and benefits except what IDOC provides MCSED. Revenue comes from IDOC and the State's general revenue fund, offset by any federal or state educational grants awarded to IDOC for MCSED. The Regional Office of Education cannot legally allocate public funds it receives from other sources for use by the MCSED program. All funds allocated to MCSED through IDOC must be accounted for through the State of Illinois' budget and expenditure process. Any funds budgeted to MCSED, but not expended, revert to IDOC and the State of Illinois' General Revenue Fund. Should additional revenue become available to MCSED during the contract year through increases to state or federal grants, IDOC then decreases the amount of revenue it provides to MCSED. Variances from what is

budgeted by IDOC for MCSED, especially personal services and fringe benefits, must be approved by IDOC through the State's budget amendment process.

As an example of IDOC's monetary control over MCSED, IDOC informs MCSED during the budgetary process how much money will be allocated to it for the upcoming fiscal year. In the recent past, IDOC has even informed MCSED when to increase its personal services expenditures and by what overall percentage. For fiscal year 2004, IDOC informed MCSED that there would be no money allocated for salary increases. For fiscal year 2005, in addition to informing MCSED that again there would be no money allocated for salary increases, IDOC also announce that there would be no money allocated to MCSED for the "pick-up" of the employees' retirement contributions and that MCSED's budget must reflect for the first time an employee contribution for single member health insurance premiums, and that MCSED must abolish its thirty percent (30%) pick-up of employees' family health insurance premium.

IDOC also instructs MCSED as to what positions will be funded for the upcoming fiscal year contract, and at which correctional facilities these positions will be located. IDOC's decision on these matters is final in the sense that MCSED has no independent authority to create or establish a position without IDOC approval, and has no means or money outside of IDOC to fund a particular position.

In May of 2004, IDOC management instructed Defendant Jurkoshek to effectuate a layoff of MCSED staff at Vandalia Correctional Center and at Illinois Youth Center St. Charles because of the pending closure of these two facilities. In addition, IDOC management directed Jurkoshek to layoff a part-time GED teacher at Centralia Correctional Center; teachers in the evening Vienna Boot Camp program; and tutors

3

employed by MCSED through a Literacy Grant provided by the Illinois Secretary of State. IDOC management also informed Jurkoshek during May, 2004 that Plaintiff Tuxhorn's position was to be eliminated and not funded for fiscal year 2005, as well as a GED tester position occupied by Kevin Downey. Other than signing the layoff notices prepared for his signature as administrative agent for MCSED, Defendant Shonkwiler had no involvement in the decision to layoff staff.

Furthermore, these cuts were reviewed and authorized by IDOC in a budget meeting held on June 1, 2004. Present at this meeting for IDOC were Deputy Director and Acting Superintendent of IDOC School District 428 Roberta Fews, Associate District 428 Superintendent Robert Eifert, District 428 Business Administrator LuAnn Eifert, Associate District 428 Superintendent Larry Wargel and Roger Williams. Present on behalf of MCSED were Defendant Shonkwiler, Defendant Jurkoshek and Ann Neal, Business Manager for the Macon Piatt Regional Office of Education.

Robert Eifert led the meeting and announced to the group the cuts that had been proposed by IDOC for the MCSED vendor contract including the Vandalia and St. Charles positions, the Vienna Boot Camp and Literacy tutors, the Centralia part-time GED teacher, and the cuts to employee benefits. The group then went through the budget, facility by facility, and, while doing so, Mr. Eifert cut all existing vacant positions as well. When the group came to MCSED's administration budget, a discussion occurred as to whether two vacant program supervisor positions should be eliminated. Robert Eifert and LuAnn Eifert were in favor of cutting these positions, however, Defendant Fews was in favor of retaining the positions, but to delay filling them. Jurkoshek also noted during this meeting that IDOC had also instructed her to cut

4

the clerical technician (Tuxhorn) and the GED tester (Downey) positions, and no comment was made by IDOC. After reviewing all of the budget cuts, no one from IDOC management proposed making any more changes and MCSED submitted the proposed budget to IDOC for execution.

Defendant Shonkwiler, as Regional Superintendent, and Defendant Jurkoshek, as MCSED Coordinator, administer the MCSED contract as directed by IDOC and School District 428. IDOC directs Shonkwiler and Jurkoshek as to which positions are to be added to the MCSED contract and which positions are to be deleted. Because Defendants Shonkwiler and Jurkoshek have the unfortunate task of sending the layoff notices to employees, individuals naturally assume that they are involved in the decision. In reality, these decisions are made by School District 428 management and IDOC fiscal staff.

### III. ARGUMENT

**A.    Rule 12(b)(6) Standard**

When considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court examines the sufficiency of the complaint, not the merits of the lawsuit. *Triad Assocs. v. Chicago Housing Authority*, 892 F.2d 583 (7th Cir. 1989), *cert. denied*, 498 U.S. 485 (1990). The court assumes as true all well pled facts, plus any reasonable inferences therefrom, and construes them in a light most favorable to the plaintiff. The question is whether, under those assumptions, the plaintiff would have a right to legal relief. *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998). A motion to dismiss will be granted only if the court finds that the plaintiff can prove no set of facts that would entitle him to relief. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987

5

F.2d 429, 432 (7th Cir. 1993). For the reasons to be set-forth herein, Plaintiff's claim against Defendants Shonkwiler, Jurkoshek and the Regional Office of Education is deficient, and, as a matter of law, Plaintiff is not entitled to legal relief.

**B.    Defendants Shonkwiler, Jurkoshek and the Regional Office of Education all Possess Immunity from Liability Under 42 U.S.C. §1983.**

The First Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, prohibits the dismissal of a public employee based solely upon his or her refusal to give support to the political party in power, unless political affiliation is an appropriate requirement of the employee's job. *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689-2690, 49 L.Ed.2d 547 (1976). The First Amendment also enjoins the dismissal of a public employee in a non-policy making position solely because of his or her political affiliation or lack of political sponsorship. *Branti v. Finkel,* 445 U.S. 507, 516-517, 100 S.Ct. 1287, 1293-1294, 63 L.Ed.2d 574 (1980). See also *Rutan v. Republican Party of Ill.,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) (extending the *Elrod-Branti* rule to applicants for public employment). And finally, the First Amendment forbids the discharge of a public employee solely for the exercise of his or her right to criticize, publicly or privately, the policies of the party in power. *Perry v. Sindermann,* 408 U.S. 593, 597-598, 92 S.Ct. 2694, 2697-2698, 33 L.Ed.2d 570 (1972).

The Plaintiff, to prevail on her Section 1983 Claim against Defendants, must produce sufficient evidence of a direct or circumstantial nature that either partisanship or retaliation for protected speech (or both) was a substantial or motivating factor in her non-renewal. If Plaintiff surmounts this threshold, the burden then shifts to Defendants to prove by a preponderance of the evidence that Plaintiff either held a position for which

partisan affiliation was an appropriate requirement, or that Plaintiff would have been dismissed in any event for permissible reasons. *Mt. Healthy City School District Board of Ed. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

Defendants may avoid inquiry into this analysis by demonstrating that they are immune from any liability whatsoever. In this case, Defendant Regional Office of Education possesses immunity because neither Defendant Shonkwiler nor Defendant Jurkoshek is "final decision-makers" or "final policy-makers" for purposes of conferring Section 1983 liability upon it. Similarly, Defendants Shonkwiler and Jurkoshek are immune from individual liability under the doctrine of Qualified Immunity.[2]

    1.    <u>Defendant Regional Office of Education is immune from Section 1983 liability because Defendants Shonkwiler and Jurkoshek were not "final policy-makers" or "final decision-makers" within the meaning of the law.</u>

A local government may not be sued under 42 U.S.C. §1983 for an injury inflicted solely by the municipality's employee(s) or agent(s); rather, only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the

---

[2] To the extent that Plaintiff is bringing suit against Defendants Shonkwiler and Jurkoshek in their official capacities, the Complaint should be dismissed.

Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. See, *e.g., Scheuer v. Rhodes,* 416 U.S. 232, 237-238, 94 S.Ct. 1683, 1686-1687, 40 L.Ed.2d 90 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

injury that the government as an entity is responsible under §1983. *Monell v. Department of Social Services*, 436 U.S. 658 (1977).

A "custom" or "policy" can take one of three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority. *Brokaw v. Mercer County*, 235 F.3d 1000, 1013 (7th Cir. 2000). Whether someone has final policy-making authority is a question of state law. *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989); *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).

The Seventh Circuit considered what constitutes final policy-making authority in *Gernetzke v. Kenosha Unified School District No. 1*, 274 F.3d 464 (7th Cir. 2001). In writing for the majority in *Gernetzke*, Judge Posner stressed that the judge-made doctrine of respondeat superior has no applicability to §1983 cases. Instead, Posner asserted that plaintiffs must demonstrate, "the officials or official boards that constitute the relevant final decision-making authority (legislative or executive) . . . was directly responsible for the deprivation." *Gernetzke,* 274 F.2d at 468.

In *Gernetzke,* Posner also discussed defendant's liability under *Monell's* "policy or custom" standard, and more specifically, liability incurred as the "final policymaking authority". On this point Posner stated:

> These usages are potentially misleading. It doesn't matter what *form* the action of the responsible authority that injures the plaintiff takes. It might be an ordinance, a regulation, an executive policy, or an executive act (such as firing the plaintiff). The question is whether the promulgator, or

8

> the actor, as the case may be--in other words, the decisionmaker--was at the apex of authority for the action in question. *See, e.g., Eversole v. Steele*, 59 F.3d 710, 716 (7th Cir. 1995). An executive official who rather than making policy merely implements legislative policy acts merely as a delegate of the legislature, and his act is therefore not the act of the municipality itself for purposes of liability under section 1983. *Auriemma v. Rice*, 957 F.2d 397 (7th Cir. 1992).

*Gernetzke,* at 468. Judge Posner's further commentary in *Gernetzke* is extremely important.

> The final decision making authority of the school district is lodged in the district's school board, but the board has promulgated regulations that delegate the administration of the five high schools in the school district to the principal of each school. This delegation, the plaintiffs argue, makes the principal the final decisionmaker so far as the mural and the request to be allowed to distribute literature are concerned. That cannot be right. It would collapse direct and derivative liability. *Every* public employee, including the policeman on the beat and the teacher in the public school, exercises authority ultimately delegated to him or her by their public employer's supreme governing organs. A police officer has authority to arrest, and that authority is 'final' in the practical sense that he doesn't have to consult anyone before making an arrest; likewise a teacher does not have to consult anyone before flunking a student. This is a perfectly good use of the word 'final' in ordinary conversation but it does not fit the cases; for if a police department or a school district were liable for employees' actions that it authorized but did not direct, we would be back in the world of respondeat superior. To avoid this, the cases limit municipal liability under section 1983 to situations in which the official who commits the alleged violation of the plaintiff's rights has authority that is final in the special sense that there is no higher authority. . . . School superintendents, principals, and teachers in Wisconsin do not have final authority in this sense, Wis. Stat. §120.13(1)(b), . . . as they would if the Wisconsin legislature had vested the authority to make all decisions concerning school administration in them rather than in the school boards. Delegation is not direction; authorization is not command; permission does not constitute the permittee the final policymaking authority. . . . Only the delegation ('conferral' would be a better term) of final authority makes the 'delegate' the final authority. *Gernetzke,* at 468-69. (Citations omitted).

Based upon the facts as supported herein, no argument can be proven to establish liability on behalf of the Regional Office of Education. The decision not to fund Plaintiff's position for the 2005 fiscal year was made entirely by IDOC, not Shonkwiler,

9

Jurkoshek or the Regional Office. Even though Shonkwiler is the elected Superintendent of Schools for Macon-Piatt Regional Office of Education, he serves merely as the administrative agent for the IDOC/MCSED vendor agreement. Although, Shonkwiler may possess final decision-making authority with respect to Regional Office of Education business, he is not a final-decision maker for these types of decisions concerning MCSED. Because Shonkwiler is entirely dependant upon funds from IDOC to pay MCSED employees' salaries and benefits, he does not have the independent authority to make funding-based employment decisions for MCSED and he has no recourse to override a budget decision made by IDOC.

The same is true of Defendant Jurkoshek. As the program coordinator, Jurkoshek is not at the "apex of authority" necessary to confer final decision-making authority upon the Regional Office of Education. Jurkoshek is an administrative employee of MCSED and is compensated through the MCSED/IDOC vendor agreement. Jurkoshek's role with MCSED is similar to that of a school administrator, and determined by *Gernetzke* not to possess final decision-making authority as a matter of law.

Because neither Shonkwiler nor Jurkoshek possess the requisite budgetary authority to qualify as a decision or policy-maker with respect to funding-based employment decisions, neither can confer liability upon the Regional Office of Education for any action taken by IDOC. Consequently, Plaintiff has not stated a cause of action under Fed. R. Civ. P. 12(b)(6) against the Regional Office of Education and the Court should dismiss the Complaint against the Defendant with prejudice.

      2.      <u>Defendants Shonkwiler and Jurkoshek, to the extent they are being sued in their individual capacities, are otherwise entitled to Qualified Immunity under the law.</u>

The doctrine of Qualified Immunity provides that governmental officials and employees performing discretionary functions are shielded from liability for civil monetary damages to the extent their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 802-803 (1982). This doctrine is designed in such a way to permit the resolution of many insubstantial claims on pre-trial motions and to avoid subjecting government officials and employees to the cost of trial. *McGrath v. Gillis*, 44 F.3d 567, 569 (7th Cir. 1995).

To defeat a claim of Qualified Immunity, a plaintiff must allege a cognizable violation of a constitutional right clearly established at the time of the alleged conduct. *McGrath*, 44 F.3d at 70. Whether a right is clearly established is a question of law, the proof of which is the plaintiff's burden. *Id.* Even if the law is clearly established, an official or employee is afforded the protection of Qualified Immunity if at the time of the challenged actions his belief that his actions were lawful is "objectively reasonable". *Id.*; citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Courts, must, as a practical matter, inquire whether a reasonable official or employee would have understood that his actions were unlawful at the time he acted. *Stevens v. Umstead*, 131 F.3d 397 (7th Cir. 1997); citing *Anderson*. The subjective issue of what a school official actually knew of the law at the time of the alleged incidents is not relevant to the inquiry. *Harlow*, at 817.

As discussed herein, it was not Defendants' (Shonkwiler and Jurkoshek) decision to eliminate funding for Plaintiff's position and lay her off. This decision was made by

IDOC fiscal officers and IDOC School District 428 management. Moreover, Plaintiff's employment contract and MCSED's Employee Handbook, (Plaintiff Exs. A and B to Complaint), even made future employment of employees contingent upon IDOC providing continued funding for their positions. Even for the duration of her employment agreement, Plaintiff served as an at-will employee subject to termination without cause and renewal subject to the employer's discretion.

Based upon these facts, a reasonable person in Defendants' (Shonkwiler and Jurkoshek) position, as a practicable manner, would not have understood that they could be personally liable for IDOC's determination not to fund Plaintiff's position for the 2005 fiscal year. Even if a reasonable person in Defendants' position had understood this, there was nothing that Defendants could have done to override IDOC's decision. For these reasons, the Court should grant Defendants Shonkwiler and Jurkoshek Qualified Immunity to the extent judgment is being sought against them in their individual capacities.

**C.** **Plaintiff Has not Pled Facts Sufficient to Support a Conspiracy Claim Against the Individual Defendants.**

To properly allege a civil conspiracy a plaintiff must include facts in the complaint rather than mere conclusions. *Webb v. Local 73, SEIU*, 2002 U.S. Dist. LEXIS 17236, 171 L.R.R.M. 2207 (N.D. Ill. Sept. 12, 2002). In *Scherer v. Balkema,* 840 F.2d 437, 441 (7th Cir. 1988), the Seventh Circuit explained that a civil conspiracy under §1983 represents "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." To establish a prima facie case of civil

conspiracy, Plaintiff must show not only "an express or implied agreement among defendants to deprive plaintiff of her constitutional rights, but also the "actual deprivations of those rights in the form of overt acts in furtherance of the agreement." 840 F.2d at 442.

Plaintiff has failed to plead any facts in Count III of her Complaint that would demonstrate an agreement, express or implied, between the individual Defendants to commit a wrong upon the Plaintiff.  Furthermore, Plaintiff has not plead facts sufficient to demonstrate why Defendants Shonkwiler and Jurkoshek would even be motivated to conspire against the Plaintiff for political reasons when Plaintiff had hired-in under Shonkwiler and Jurkoshek.  Additionally, it is difficult to place Defendants Shonkwiler and Jurkoshek voluntarily in a conspiracy when the decision not to fund Plaintiff's position was made by IDOC, and Defendants had no means to override this decision. Consequently, Plaintiff has failed to allege facts in her Complaint sufficient to establish a conspiracy between the individual Defendants to deprive her of any established Constitutional rights and the Court should dismiss the Complaint against Defendants Shonkwiler and Jurkoshek.

**D.    Plaintiff's Claim for Punitive Damages Against Defendants Shonkwiler, Jurkoshek and the Regional Office Should be Disallowed.**

Under Section 1983, punitive damages are proper against a defendant in his or her individual capacity "either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others." *Davis v. Mason County,* 927 F.2d 1473, 1485 (9th Cir.1991) (citing *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)).  Additionally, a public entity cannot be sued under Section 1983 as a matter of law for punitive damages. *See*

*City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Ruvalcaba v. City of Los Angeles,* 167 F.3d 514, 523 (9th Cir.1999).

Under Illinois law, punitive damages are not allowed against any local public entity or against any public official arising out of an act or omission while serving in an official executive, legislative, quasi-legislative or quasi-judicial capacity. 745 ILCS 10/2-102. This includes the Regional Office of Education as an "educational service area".[3] 745 ILCS 10/1-206.

Moreover, Plaintiff's claim for punitive damages against Defendant's Shonkwiler and Jurkoshek in their individual capacities cannot survive in that there exists no set of facts that can be proven to support an assertion that Defendants acted with reckless or callous disregard for the Plaintiff's rights or intentionally violated federal law. For these reasons, Plaintiff's request for punitive damages against the Regional Office of Education, and against Defendants Shonkwiler and Jurkoshek in their individual capacities, should be dismissed.

**WHEREFORE**, Plaintiff has not alleged a claim sufficient to state a cause of action against the Regional Office of Education, nor the individually named Defendants; consequently the Defendants respectfully request this Honorable Court, as a matter of law, to dismiss Plaintiff's Complaint against them with prejudice.

---

[3] Any punitive damage claim against either Shonkwiler or Jurkoshek in their official capacity would essentially be a punitive damage claim against the Regional Office of Education, which is unavailable to Plaintiff under the same analysis.

Respectfully Submitted,

CHARLES SHONKWILER, PAM JURKOSHEK and MACON-PIATT REGIONAL OFFICE OF EDUCATION

By: Robbins, Schwartz, Nicholas,
 Lifton & Taylor, Ltd.

/s/ Dennis L. Weedman
One of their Attorneys

Dennis L. Weedman
Reg. #6217020
Robbins, Schwartz, Nicholas,
 Lifton & Taylor, Ltd.
420 Millikin Court
Decatur, Illinois 62523
217/428-2100
217/428-2186 (fax)

| STATE OF ILLINOIS | ) |
|---|---|
| | ) ss |
| COUNTY OF SANGAMON | ) |

AFFIDAVIT

The undersigned, PAM JURKOSHEK, being first duly sworn under oath, states as follows:

1. That I am of an adult age and I have the capacity to make this Affidavit.

2. That at all times relevant hereto I have been an employee of the Macon-Piatt Regional Office of Education and Coordinator for Macon\Corrections Special Education District (hereinafter "MCSED"). My office is located at the Illinois Department of Corrections, Conkle Hall, 1301 Concordia Court, Springfield, Illinois 62794.

3. MCSED is a not-for-profit operation of the Macon-Piatt Regional Office of Education. MCSED provides special education services exclusively to the Illinois Department of Corrections (hereinafter "IDOC") and MCSED personnel work exclusively at IDOC facilities. The Regional Office of Education and Regional Superintendent of Schools Charles Shonkwiler serve as administrative agents for MCSED.

4. The Regional Office of Education is entirely dependent upon IDOC for funding of the MCSED program. Revenue comes from IDOC and the State's general revenue fund, offset by any federal or state educational grants awarded to IDOC for MCSED. The Regional Office of Education cannot legally allocate public funds it receives from other sources for use by the MCSED program.

5. All funds allocated to MCSED through IDOC must be accounted for through the State of Illinois' budget and expenditure process. Any funds budgeted to MCSED, but not expended, revert to IDOC and the State of Illinois' General Revenue Fund. Should additional revenue become available to MCSED during the contract year through increases to state or federal grants, IDOC then decreases the amount of revenue it provides to MCSED. Variances from what is budgeted by IDOC for MCSED, especially for personal services and fringe benefits, must be approved by IDOC through the State's budget amendment process.

6. IDOC informs MCSED during the budgetary process each Spring how much money will be allocated to it for the upcoming fiscal year. In the recent past, IDOC has even informed MCSED when to increase its personal services expenditures and by what overall percentage. For fiscal year 2004, IDOC informed MCSED that there would be no money allocated for salary increases. For fiscal year 2005, in addition to informing MCSED that again there would be no money allocated for salary increases, IDOC also announced that there would be no money allocated to MCSED for the "pick-up" of the employees' retirement contributions and that MCSED's budget must reflect for the first time an employee contribution for single member health insurance premiums, and that MCSED must abolish its thirty percent (30%) pick-up of employees' family health insurance premium.

7. IDOC also instructs MCSED as to what positions will be funded for the upcoming fiscal year contract, and at which correctional facilities these positions will be located. IDOC's decision on these matters is final in the sense that MCSED has no independent authority to create or establish a position without IDOC approval, and has no means or money outside of IDOC to fund a particular position.

8. In May of 2004, IDOC management instructed me to effectuate a layoff of MCSED staff at Vandalia Correctional Center and at Illinois Youth Center St. Charles because of the pending closure of these two facilities. In addition, IDOC management directed me to layoff a part-time GED teacher at Centralia Correctional Center; teachers in the evening Vienna Boot Camp program; and tutors employed by MCSED through a Literacy Grant provided by the Illinois Secretary of State. IDOC management also informed me in May, 2004 that Kevin Downey's position was to be eliminated and not funded for fiscal year 2005, as well as Janice Tuxhorn's position. Other than signing the layoff notices prepared for his

signature as administrative agent for MCSED, Defendant Shonkwiler had no involvement in the decision to layoff staff.

9. The cuts referenced in paragraph eight above were reviewed and authorized by IDOC in a budget meeting held on June 1, 2004. Present at this meeting for IDOC were Deputy Director and Acting Superintendent of IDOC School District 428 Roberta Fews, Associate School District 428 Superintendent Robert Eifert, School District 428 Business Administrator LuAnn Eifert, Associate School District 428 Superintendent Larry Wargel and Roger Williams. Present on behalf of MCSED were Regional Superintendent of Schools Charles Shonkwiler, myself and Ann Neal, Business Manager for the Macon Piatt Regional Office of Education.

10. Robert Eifert led the meeting and identified for the group which cuts had been proposed by IDOC for the MCSED vendor contract including the Vandalia and St. Charles positions, the Vienna Boot Camp and Literacy tutors, the Centralia part-time GED teacher, and the cuts to employee benefits. The group then went through the budget, facility by facility, and, while doing so, Mr. Eifert cut the aforementioned positions and all existing vacant positions as well. When the group came to MCSED's administration budget, a discussion occurred as to whether two vacant program supervisor positions should be eliminated. Robert Eifert and LuAnn Eifert were in favor of cutting these positions; however, Deputy Director Roberta Fews was in favor of retaining the positions, but to delay filling them. I noted during this meeting that IDOC had also instructed me to cut positions occupied by Janice Tuxhorn and Kevin Downey, and no comment was made by IDOC. After reviewing all of the budget cuts, no one from IDOC's management proposed making any more changes and MCSED submitted the proposed budget to IDOC for execution.

Further Affiant sayeth not.

/s/ Pam Jurkoshek
Pam Jurkoshek

subscribed and sworn to before me this 13th day of April, 2005.

_____
Notary Public